UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULINE MARIE HOGAN,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 2:25-cv-02306-DJC-CSK (SS)<br>FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br>(ECF Nos. 14, 16) |

Plaintiff Pauline Marie Hogan seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, the Court recommends Plaintiff's motion be DENIED, the Commissioner's cross-motion be GRANTED, and the final decision of the Commissioner be AFFIRMED.

/ / /

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) for the issuance of findings and recommendations. See Local Rule 304.

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review

of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act on November 19, 2020. Administrative Transcript ("AT") 200-209. Plaintiff alleged a disability onset date of October 18, 2001 and that she suffered from back pain, injuries resulting from a October 18, 2001 car accident, a hip injury, high cholesterol, anxiety, and asthma. AT 216, 220. Plaintiff's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). AT 95-99, 100-104, 111-113. Plaintiff appeared in person with a

representative at a hearing before an ALJ on February 7, 2022, where Plaintiff testified about her impairments and a vocational expert ("VE") testified about hypothetical available jobs in the economy. AT 34-47.

On March 25, 2022, the ALJ issued a decision finding Plaintiff was not disabled. AT 12-27. On January 27, 2023, the Appeals Council denied Plaintiff's appeal. AT 1-6. Plaintiff filed suit in the Eastern District of California, which was voluntarily remanded on December 20, 2023. AT 1203; *see Hogan v. Commissioner of Social Security*, No. 2:23-cv-00548-JDP (E.D. Cal.).

Plaintiff appeared in person with a representative at a second hearing before an ALJ on December 13, 2024, where Plaintiff testified about her impairments and a VE testified about hypothetical available jobs in the economy. AT 1230-1257.

On January 29, 2025, the ALJ issued an opinion once again finding Plaintiff not disabled. AT 1200-1221. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 29, 2020, Plaintiff's application date. AT 1206. At step two, the ALJ found Plaintiff had the following severe impairments: cervical and lumbar disc disease, right shoulder soft tissue injury, and degenerative joint disease of the hips. *Id*.

In addition to Plaintiff's severe impairments, the ALJ assessed several impairments that he concluded were non-severe, including: asthma; gastroesophageal reflux disease; diabetes; adjustment disorder with anxiety; and alcoholism. AT 1206-1207. With regard to Plaintiff's adjustment disorder and alcoholism, the ALJ assessed the severity of her impairments according to the "Paragraph B" criteria.[2] The ALJ subsequently concluded Plaintiff had no limitations in each of the four "Paragraph B"

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

categories, citing Plaintiff's normal mental findings, activities such as having a driver's license, traveling to Lake Tahoe on vacation after her onset date, preparing meals, making change, and performing self-care, and findings from consultative psychologists concluding that Plaintiff did not suffer from a severe mental impairment. AT 1208-1209.

At step three, the ALJ found that Plaintiff's combination of impairments did not meet or medically equal any listing. AT 1210-1211 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), and 1.18 (Abnormality of a major joint(s) in any extremity). *Id*.

The ALJ next found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except:

> She can lift, carry, push, or pull up to 20 pounds occasionally, 10 pounds frequently. She can sit for six hours in an eight-hour workday, stand for six hours in an eight-hour workday and walk for six hours in an eight-hour workday. She can occasionally reach overhead with the right upper extremity. She can climb ramps or stairs occasionally and never climb ladders or scaffolds. She can balance, stoop, kneel, crouch and crawl occasionally. She can never work at unprotected heights and should avoid concentrated exposure to moving, mechanical parts.

AT 1211. In making this finding, the ALJ considered Plaintiff's symptoms "to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence," medical opinions, and prior administrative findings. *Id*.

Evaluating the medical opinions, the ALJ found the opinion testimony of Dr. Satish K. Sharma, M.D., who performed a consultative examination on Plaintiff on August 24, 2023 to be somewhat persuasive. AT 1217 (citing AT 2059-2064). Dr. Sharma concluded Plaintiff had normal gait, intact muscle power in all extremities, but a decreased range of motion in Plaintiff's right wrist after a recent fall. *Id*. Among other limitations, Dr. Sharma recommended Plaintiff lift or carry up to 20 pounds occasionally, 10 pounds frequently, occasionally bend and stoop, and frequently push and pull objects

with her right arm due to wrist pain. *Id*. The ALJ declined to adopt the limitation in regard to frequent pushing and pulling due to a doctor's notation in the record from July 5, 2023 finding Plaintiff had a grip strength of 40 pounds in her right hand. *Id*. (citing AT 2082).

The ALJ then evaluated the medical opinion testimony of Dr. Aparna Dixit, Ph.D., who evaluated Plaintiff in a consultative psychological exam on February 28, 2021. *Id*. (citing AT 999-1003). Dr. Dixit found that Plaintiff has no difficulty in remembering and following simple instructions, has a mild impairment in retaining and following complex and detailed instructions, and has a mild impairment in working with the public. *Id*. Dr. Dixit found no impairment in Plaintiff's ability to work with supervisors and co-workers. *Id*. The ALJ found this opinion to be persuasive because it was supported by the examination findings and consistent with the ALJ's normal mental status findings in step two, where Plaintiff was found to not have a severe mental impairment. *Id*.

Next, the ALJ examined the opinion of Dr. Christine E. Fernando, M.D., who evaluated Plaintiff in a consultative physical exam on January 26, 2021. *Id*. (citing AT 955-961). Dr. Fernando found that Plaintiff could stand or walk up to six hours of an eight-hour day with frequent breaks, or alternatively, sit for six hours in an eight hour day with frequent breaks. *Id*. (citing AT 955-961). Dr. Fernando also found that Plaintiff could "occasionally reach, grasp, push, and pull." *Id*. The ALJ found this opinion to be unpersuasive because Dr. Fernando's opinion was not supported by the examination findings, which the ALJ concluded "included good muscle tone and strength in all extremities with no muscle wasting or weakness, intact range of motion of both shoulders, normal range of motion of [Plaintiff's] wrists, normal knee range of motion, and normal gait." *Id*. Further, the ALJ concluded that these findings were not consistent with the findings of Dr. Sami Moshi, a physician who saw Plaintiff on July 26, 2021, and found, among other things, that Plaintiff had normal alternating movements of the upper limbs, normal to light touch, an ability to sit unsupported and normal gait. *Id*. (citing AT 1191).

The ALJ then evaluated the medical opinion testimonies of Drs. L. Huynh, M.D.

and H. Samplay, M.D., state agency medical consultants who evaluated Plaintiff at her initial disability determination and upon reconsideration. AT 1218 (citing AT 48-66, 68-92). Dr. Huynh opined that Plaintiff could occasionally lift, carry, push and pull 20 pounds and frequently lift, carry, push, and pull ten pounds. *Id*. (citing AT 61-64). Dr. Huynh also opined Plaintiff could stand or walk six hours in an eight-hour day or alternatively sit six hours in an eight-hour day. *Id*. Further, Dr. Huynh opined Plaintiff could occasionally climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, occasionally stoop, kneel, crouch, and crawl, and avoid concentrated exposure to extreme cold and hazards that include moving machinery. *Id*. Dr. Samplay affirmed Dr. Huynh's opinion. *Id*. (citing AT 85-91). The ALJ found both opinions persuasive, finding that they were supported by the medical evidence and consistent with other medical evidence in the record, such as findings of normal muscle bulk on Plaintif's lower limbs, normal muscle tone, and a normal gait. *Id*. However, the ALJ determined that Plaintiff could never climb ladders or scaffolds and may occasionally reach overhead with her right upper extremity. *Id*.

Regarding Plaintiff's mental impairments, the ALJ examined the opinion testimonies of Dr. N. Haroun, M.D. and Dr. L. Colsky, M.D., who also examined Plaintiff at the initial disability determination and upon reconsideration. *Id*. Dr. Haroun opined Plaintiff had no limitations in understanding, remembering, and applying information, interacting with others, and in concentration, persistence, and pace. *Id*. (citing AT 59). However, Dr. Haroun concluded Plaintiff had a mild limitation in adapting to change or managing oneself. *Id*. Dr Colsky affirmed Dr. Haroun's opinion. *Id*. (citing AT 82). The ALJ found these opinions persuasive, finding that they are supported by a review and summary of the medical evidence and consistent with normal mental findings in the record. *Id*. The ALJ slightly disagreed with the overall findings and concluded that Plaintiff also had no limitation in her ability to adapt or manage oneself. *Id.*

The ALJ then reviewed the findings of Dr. Tsbawa, a non-examining state agency physician who reviewed the evidence on September 6, 2023. AT 1218-1219. Dr. Tsbawa

concluded that Plaintiff could perform light work, frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but occasionally climb ladders, ropes, and scaffolds. *Id*. Dr. Tsbawa also opined that Plaintiff could frequently reach overhead with her right upper extremity. AT 1219 (citing AT 1276-1284). The ALJ found this opinion partially persuasive and found that Plaintiff can only occasionally balance, stoop, kneel, crouch, and crawl and occasionally climb ramps or stairs and as above, is precluded from climbing ladders or scaffolds. *Id*. The ALJ concluded that Dr. Tsbawa's opinion was mostly consistent with the opinions of Drs. Huynh and Samplay and consistent with the opinion of Dr. Sharma. *Id*.

The ALJ then reviewed the medical opinion testimony of Dr. Nancy Brison-Moll, who performed a consultative examination on Plaintiff on September 21, 2023. *Id*. (citing AT 2066-2074). Dr. Brison-Moll found no impairment, citing Plaintiff's daily activities and that Plaintiff was alert and showed unimpaired memory. *Id*. The ALJ found this opinion to be persuasive, and consistent with Dr. Dixit's opinion as well as the treatment evidence discussed by the ALJ at step two. *Id*.

Last, the ALJ reviewed the third-party statement from Scott Greeson, Plaintiff's boyfriend, submitted on December 4, 2020. *Id*. (citing AT 1580-1587). Plaintiff's boyfriend reported "extreme anxiety," that Plaintiff did not bathe frequently, did not know what a razor was, and does not perform household chores or drive. *Id*. The ALJ found Plaintiff's boyfriend's statements not persuasive, citing inaccuracies with the administrative record, including statements Plaintiff made to Dr. Dixit regarding hygiene. *Id*.

At step four, the ALJ determined Plaintiff did not have past relevant work. AT 1220. However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including (i) routing clerk, Dictionary of Occupational Titles ("DOT") #222.687-022, light, SVP 2, with 123,062 jobs nationally; (ii) storage rental clerk, DOT #295.367-026, light, SVP 2, with 58,345 jobs nationally; and (iii) sales attendant,

DOT #299.677-010, light, SVP 2, with 232,626 jobs nationally.[3] Thus, the ALJ concluded Plaintiff was not disabled. AT 1221.

On June 11, 2025, the Appeals Council denied Plaintiff's appeal. AT 1194-1199. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 14, 16.)

## III. ISSUES PRESENTED FOR REVIEW

Plaintiff argues the ALJ (1) erred in his conclusion that Plaintiff's alcoholism and adjustment disorder were non-severe impairments by not being supported by the record; and (2) erred in evaluating the medical opinion testimony of Dr. Fernando. Pl. Mot. at 12-20 (ECF No. 14).

Conversely, Defendant argues the ALJ (1) properly determined that Plaintiff's mental impairments were non-severe; and (2) properly concluded that Dr. Fernando's medical opinion testimony was unpersuasive. Def. Mot. at 3-10 (ECF No. 16).

## IV. DISCUSSION

### A. Step Two Severe and Non-Severe Impairments

#### 1. Legal Standards

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately

---

[3] "Light" in the ALJ's step-five determination references medium work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b)

"SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See DOT, App. C, § II, available at 1991 WL 688702.

to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations omitted). The step two assessment is a "de minimus screening to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001).

Regardless of the step two findings, "the ALJ [is] required to consider all impairments—severe and non-severe—in his RFC analysis." *Michelle L.A. v. O'Malley*, 2024 WL 4361615, at *6 (S.D. Cal. Sept. 30, 2024) (citing *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018); *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017)). A failure to properly resolve an impairment at step two may be harmless if the ALJ considers the functional limitations caused by that impairment later in the decision. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

2. <u>Analysis</u>

a. *Findings of Non-Severity*

Plaintiff argues the ALJ erred in finding that her adjustment disorder and alcoholism were non-severe. Pl. Mot. at 13. Plaintiff argues her attendance at five counseling sessions treating her anxiety and post-traumatic stress disorder contradicts the ALJ's findings. *Id*. (citing AT 1133-1134). Plaintiff attended five sessions on March 8, 2019, April 5, 2019, October 2, 2020, October 15, 2020, and October 5, 2021. *Id*. Plaintiff also argues the results from a PHQ-9 exam[4] where she received a score indicating severe depression also contradicts the ALJ's findings. *Id*. (citing AT 2243-2244). Plaintiff also appears to challenge the ALJ's findings regarding Plaintiff's lumbar disc disease and hip ailments, by invoking treatment records showing Plaintiff was

---

[4] A PHQ-9 refers to the Patient Health Questionnaire ("PHQ"), which is a diagnostic for common mental disorders. Kurt Kroenke et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, J. Gen. Internal Med. 606 (2001). The PHQ-9 evaluates depression. *Id*.

evaluated for hip pain on August 7, 2024, and was given a Toradol injection. *Id*. (citing AT 2242). The Court declines to address this argument because the ALJ concluded that these were medically severe impairments. *See* AT 1206.

At step two, the ALJ found that Plaintiff's medically determinable impairments of alcoholism and adjustment disorder did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and were non-severe. AT 1208. In concluding Plaintiff's alcoholism was not severe, the ALJ referenced a treatment record concluding she had "endorsed sobriety." AT 1149. When discussing Plaintiff's adjustment disorder, the ALJ referenced Plaintiff's therapy sessions and a PHQ-9 score of 21 on August 15, 2024, indicating severe depression. AT 1207-1208 (citing AT 1133-1134, 2244.) However, the ALJ also found Plaintiff received a zero on a PHQ-4 exam[5] taken on September 23, 2020; a zero on a PHQ-9 questionnaire taken on January 5, 2022; after receiving a score of 18 on September 17, 2022 and a score of 16 on October 11, 2022, which indicated moderately severe depression, Plaintiff received a three on a PHQ-9 exam taken on October 18, 2022; Plaintiff later received a PHQ-9 score of four on October 19, 2022; Plaintiff received a PHQ-9 score of nine on June 1, 2023, indicating mild depression. *Id*. (citing AT 945-946, 1141, 1850, 1860, 1870, 1840, 1824). Following Plaintiff's PHQ-9 score of severe depression on August 15, 2024, Plaintiff was examined on September 19, 2024 and received a PHQ-9 score of six, indicating mild depression; Plaintiff was also evaluated on September 20, 2024 and received a PHQ-9 score of four, indicating no depression. *Id*. (citing AT 2218, 2208). The ALJ also found Plaintiff had denied depression at telehealth visits dated September 30, 2024 and November 20, 2024. AT 1208 (citing AT 2190, 3225). Even when Plaintiff's PHQ-9 results indicated she was severely depressed, they were offset by Plaintiff's appearance of appropriate mood, alertness, and normal judgment, which was also evident at prior

---

[5] A PHQ-4 exam is a four-item self-report questionnaire that includes a two-item depression scale and a two-item anxiety scale. *Anxiety and Depression (PHQ-4)*, McGill Office of Medical and Learner Affairs, https://www.mcgill.ca/schoolofmedicine-learneraffairs/pgme/wellness-support/self-screening-tools/anxiety-and-depression-phq-4.

evaluations. AT 1208 (citing AT 2244).

When a claimant has presented a "colorable claim" of mental impairment, the ALJ is required "to follow a special psychiatric review technique." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 725-26 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a). In it, the ALJ rates the degree of functional limitation for four functional areas and determines whether the impairment is severe. *Keyser*, 648 F.3d at 725; 20 C.F.R. § 404.1520a. The four areas are known as the "paragraph B" criteria: understanding and applying information; interacting with others; concentrating, persisting, and maintain pace; and adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04(B), 12.06(B), 12.15(B). Agency policy explains that "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment[.] . . . The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment[.]" Social Security Ruling (SSR) 96-8p.

Using the psychiatric review technique outlined in "Paragraph B," the ALJ concluded Plaintiff had no limitation in all four areas. AT 1208-1209. In making these determinations, the ALJ reasoned that Plaintiff had linear thought process and logical thought content; had an ability to perform daily activities that would be otherwise inconsistent with a severe impairment, such as having a driver's license, preparing meals, performing self-care, and using public transportation; and was shown to have normal attention and cognition. *Id*. The ALJ also referenced Dr. Brison-Moll's findings that Plaintiff did not suffer from a mental impairment. AT 1208 (citing AT 2065-2074).

In sum, Plaintiff failed to identify any particular evidence the ALJ failed to consider in his step two findings or provide any further argument as to why the record does not support the ALJ's findings. *See Woods v. Kijakazi*, 32 F. 4th 785, 794 (9th Cir. 2022) (upholding step two findings on these grounds). Additionally, the ALJ justified his findings by referencing records on Plaintiff's mental state, daily activities, and records from consultative psychologists finding no severe mental impairment. *See Kim R. S. v. Kijakazi*, 2022 WL 1405429, at *7 (C.D. Cal. May 4, 2022) (finding substantial evidence

at step two where the ALJ cited to normal mental health records and daily activities where "Plaintiff's mental impairments did not impose more than a minimal limitation on her functioning."); *see also Ford*, 950 F.3d. at 1154 ("Substantial evidence is 'more than a mere scintilla' but 'less than a preponderance.'). Therefore, the Court finds there was substantial evidence for the ALJ to conclude that Plaintiff did not have a severe mental impairment or combination of severe mental impairments.

b. *Incorporation into the RFC*

Plaintiff argues that the ALJ erred by (1) failing to discuss Plaintiff's non-severe mental health conditions at steps four and five; and (2) crafting an RFC that does not contain limitations relating to Plaintiff's non-severe adjustment disorder. Pl. Mot. at 14-15. Defendant counters that (1) the ALJ considered Plaintiff's non-severe conditions during his evaluation of medical opinion testimony; and (2) the ALJ was not required to accommodate Plaintiff's non-severe conditions in the RFC itself. Def. Mot. at 5-8.

It is generally insufficient for an ALJ "to make a 'vague and conclusory assertion at step two that [the ALJ's] subsequent RFC analysis reflects the degree of limitation that [the ALJ] has found in the paragraph B mental function analysis." *Montano v. Commissioner of Social Security Administration*, 2022 WL 1617306, at *3 (D. Ariz. May 23, 2022). While the ALJ need not include every impairment into the final RFC, he must consider the limiting effects of all impairments. *Medlock v. Colvin,* 2016 WL 617399, at *5 (C.D. Cal. Oct. 20, 2016). However, an ALJ may properly consider Plaintiff's non-severe impairments by analyzing medical opinion testimony regarding these impairments. *Miguel A. V. v. Saul*, 2021 WL 2864868, at *3 (C.D. Cal. Jul. 8, 2021).

The ALJ first addressed RFC formulation at the conclusion of his step two findings. AT 1209-1210. The ALJ affirmed that Plaintiff had no severe mental impairment and found that Plaintiff had no corresponding functional limitations. AT 1209. The ALJ further concluded that the medical record and the findings of Plaintiff's physicians did not support corresponding functional limitations. AT 1209-1210.

When formulating Plaintiff's RFC, the ALJ referred to Plaintiff's mental limitations

when evaluating the medical opinion testimonies of Dr. Dixit, Dr. Haroun, Dr. Colsky, Dr. Brison-Moll, and Plaintiff's boyfriend. AT 1217-1219. The ALJ acknowledged Plaintiff's non-severe limitations and their factual background through references to the step two findings. *Id*.

In sum, the ALJ considered Plaintiff's non-severe limitations and incorporated his findings of no severe mental impairment at "Paragraph B" and proceeded to consider Plaintiff's non-severe limitations at the RFC formulation stage by evaluating the aforementioned medical opinion testimonies. *See Miguel A*., 2021 WL 2864868, at *3. Therefore, the Court concludes the ALJ properly evaluated Plaintiff at step two and incorporated his findings into the RFC. The Court recommends granting Defendant summary judgment on this issue and recommends denying Plaintiff summary judgment on this issue.

**B. Medical Opinion Testimony**

1. <u>Legal Standards</u>

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant

objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

2. Analysis

Plaintiff argues the ALJ erred in assessing Dr. Fernando's medical opinion testimony by failing to consider the following outside evidence when assessing consistency: (1) a May 5, 2022 orthopedic treatment note written by Dr. Kevin Hilton, M.D.; (2) an initial physical therapy evaluation report dated June 15, 2022; and (3) an Emergency Room Department record dated June 20, 2022 regarding Plaintiff's treatment for leg pain. Pl. Mot. 15-17. In contrast, Defendant argues the ALJ properly addressed the supportability and consistency factors because (1) Dr. Fernando's opinion testimony was not supported by her own medical findings; and (2) the ALJ properly referred to evidence throughout the record when evaluating consistency. Def. Mot. 9-10.

As described above, Dr. Fernando found that Plaintiff could stand or walk up to six hours of an eight-hour work day with frequent breaks; sit for up to six hours of an eight hour work day with frequent breaks; "and occasionally reach, grasp, push, and pull." AT 1217 (citing AT 960). The ALJ did not find this opinion persuasive because it was not supported by Dr. Fernando's own findings. *Id*. Specifically, the ALJ referenced

findings of "good muscle tone," "strength in all extremities with no muscle wasting or weakness," and normal knee range of motion and gait. *Id.*

Further, the ALJ found this opinion to be inconsistent with the findings of Dr. Moshi, a physician who saw Plaintiff on July 26, 2021. *Id*. (citing AT 1191). Dr. Moshi's notes documented Plaintiff having normal muscle bulk in her upper and lower limbs and normal muscle tone. *Id*. Dr. Moshi also found normal alternating movements in Plaintiff's upper limbs as well as normal to light touch. *Id*. Plaintiff was also found to sit unsupported and stand without postural instability and have normal gait. *Id*. The ALJ also referenced "numerous observations of normal range of motion with no neurologic deficits" in Plaintiff's administrative transcript. *Id*.

In sum, the ALJ concluded that Dr. Fernando's medical opinion testimony was not supported by findings in Dr. Fernando's own report and inconsistent with observations from another physician. The Court concludes that the ALJ's reasoning satisfied the supportability and consistency factors and recommends granting Defendant summary judgment and denying Plaintiff summary judgment on this issue.

## V. CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

## FINDINGS AND RECOMMENDATIONS

Accordingly, the Court RECOMMENDS:

1. Plaintiff's motion for summary judgment (ECF No. 14) be DENIED;
2. The Commissioner's cross-motion (ECF No. 16) be GRANTED;
3. The final decision of the Commissioner be AFFIRMED; and
4. The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days

after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: July 27, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, hoga.2306.25.msj cjra